UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HAROL GUILLERMO GUARNIZO
CUSPIAN,

        Petitioner,

    v.

                                  Case No.:  2:26-cv-987-SPC-DNF

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY *et
al.*.

        Respondents,

## OPINION AND ORDER

Before the Court are Harol Guillermo Guarnizo Cuspian's Petition for Writ of Habeas Corpus (Doc. 1), the federal government's response (Doc. 11), and Guarnizo Cuspian's reply (Doc. 12).  For the below reasons, the Court grants the petition.

**A. Background**

Guarnizo Cuspian is a native and citizen of Colombia who entered the United States on January 31, 2024, to seek asylum.  Two days later, the Department of Homeland Security ("DHS") issued Guarnizo Cuspian a notice to appear and released him under an order of recognizance.  Since then, he applied for asylum, obtained work authorization, and complied with all terms

of his release. He has stable employment, a Florida driver's license, and no criminal history.

On March 2, 2026, Guarnizo Cuspian appeared at a Miami immigration court for his master calendar hearing. DHS moved to dismiss the removal case, and the immigration judge granted the request over Guarnizo Cuspian's objection. When Guarnizo Cuspian left the courtroom, Immigration and Customs Enforcement ("ICE") agents arrested him and designated him for expedited removal. The next day, ICE transferred Guarnizo Cuspian to Alligator Alcatraz, where he remains detained. Guarnizo Cuspian argues his arrest violated the Fourth Amendment and his detention violates the Fifth Amendment, the Immigration and Nationality Act, and its implementing regulations. The government argues Guarnizo Cuspian is subject to mandatory detention under 8 U.S.C. § 1225(b)(1).

**B. Legal Framework for Expedited Removal**

Given the procedural background of Guarnizo Cuspian's immigration proceedings and the government's justification for detaining him, an understanding of expedited removal is useful. The INA establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration

judge, and it provides the noncitizen an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment.  DHS may release the noncitizen into the country on parole while the process plays out, but only if the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings."  8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process.  It allows immigration officers to remove noncitizens "without further hearing or review."   8 U.S.C. § 1225(b)(1)(A)(i).   Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways.  First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission."  *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 61, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied[.]" Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025). The next day, DHS published a notice expanding the application of expedited removal. Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 152-53, 2025 WL 2494908, at *5 (D.D.C. 2025). The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

*Id.*

## C. Jurisdiction

The respondents argue three provisions of the INA divest the Court of jurisdiction over Guarnizo Cuspian's petition. The first states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and

> statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Third, the respondents point to a provision that bars courts from hearing certain claims relating to expedited removal.  It states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i)…any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title, (ii)…a decision by the Attorney General to invoke the provisions of such section, (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or (iv)…procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).  The INA carves out an exception to this jurisdiction-stripping section for habeas actions "limited to the determinations of (A) whether the petitioner is an alien, (B) whether the petitioner was ordered

6

removed under [section 1225(b)(1)], and (C) whether the petitioner…is an alien lawfully admitted for permanent residence, has been admitted as a refugee…, or has been granted asylum[.]"  *Id.* at § 1252(e)(2).

§ 1252(g) does not strip the Court of jurisdiction here because Guarnizo Cuspian does not challenge the commencement or adjudication of a removal proceeding or the execution of a removal order.  Nor does § 1252(b)(9), because Guarnizo does not request review of a removal order.  Whether § 1252(a)(2)(A) applies is a more difficult question.  It covers a wider range of challenges to the expedited removal process.  Some courts have found it inapplicable in similar situations.  *See*, *e.g.*, *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *3 (E.D. Mich. Oct. 29, 2025); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at *5-6 (N.D. Ohio Oct. 16, 2025); *Noori v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *8 (S.D. Cal. Oct. 1, 2025), *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 411, 2025 WL 2630826, at *9 (S.D.N.Y. Sept. 12, 2025); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 141, 2025 WL 1953796, at *6-7 (W.D.N.Y. July 16, 2025).  But even if § 1252(a)(2)(A) does cover Guarnizo Cuspian's challenge to the legality of his detention, the Court retains a degree of jurisdiction under the Suspension Clause of the Constitution.

The Suspension Clause states, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion

7

the public Safety may require it."  U.S. Const. Art. I ¶ 9, cl. 2.  The clause reflects that "the Framers considered the writ a vital instrument for the protection of individual liberty[.]"  *Boumediene v. Bush*, 553 U.S. 723, 743 (2008).  It ensures "the Judiciary will have a time-tested device, the writ, to maintain the delicate balance of governance that is itself the surest safeguard of liberty" and "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account."  *Id.* at 745 (internal quotation marks removed).

In *Boumediene v. Bush*, the Supreme Court identified three factors "relevant in determining the reach of the Suspension Clause: (1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ."  *Id.* at 766.

Guarnizo Cuspian's status is undisputed.  He is a noncitizen who DHS paroled into this country after an individualized consideration of his circumstances.  DHS revoked Guarnizo Cuspian's release on recognizance and detained him with no meaningful process.  Without habeas review, he would have no opportunity to challenge the legal basis of his detention.  As to the second factor, Guarnizo Cuspian was not apprehended at the border or a port of entry.  He was apprehended at an immigration court in Miami, years after

his parole into the country, where he had appeared to participate in his removal case and asylum application. And finally, there appear to be no practical obstacles to resolving Guarnizo Cuspian's entitlement to a writ of habeas corpus. In fact, his claim is amenable to a prompt resolution based on the pleadings already filed with the Court. Thus, the Suspension Clause prevents section 1252(a)(2)(A) or any other section of the INA from stripping the Court of jurisdiction over Guarnizo Cuspian's challenge to the legality of his detention.[1]

The Court acknowledges the Suspension Clause does not give it jurisdiction over the expedited removal order. The clause "protects the writ as it existed in 1789, when the Constitution was adopted." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 116 (2020) (internal quotation marks and citation omitted). The writ of habeas corpus was not then understood "to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Id.* at 117. "The writ simply provided a means of contesting the lawfulness of restraint and securing release." *Id.*

---

[1] Other courts applying the *Boumediene* factors in actions challenging detention based on DHS's new practices for expedited removal designations have reached the same conclusion. *See Noori v. Larose*, 25-cv-3006-BAS-MMP, 2025 WL 3295386, at *2-3 (S.D. Cal. Nov. 26, 2025); *Noori v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *8-9 (S.D. Cal. Oct. 1, 2025); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1141-43 (D. Or. 2025).

### D. The Petitioner's Claims

Guarnizo Cuspian asserts the respondents are detaining him in violation of the INA, its implementing regulations, and the Fifth Amendment. The respondents argue § 1225(b)(1)(B)(ii) makes Guarnizo Cuspian's detention mandatory.

The Court finds Guarnizo Cuspian's due process claim dispositive. The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts look to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

10

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Guarnizo Cuspian's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. DHS found Guarnizo Cuspian eligible for release when he entered the country in 2024. Since then, Guarnizo Cuspian has kept his criminal record clean, and he proved he is no flight risk by complying with all conditions of release and attending his removal hearing.

ICE arrested Guarnizo Cuspian and issued an expedited removal order without any new or additional information suggesting he is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have been paroled in the United States for more than two years from the class eligible for expedited removal). What is more, the Court recognizes significant value in additional safeguards, like the ones DHS attempted to circumvent by dismissing the original removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress.

11

Third, the government has not established any legitimate interest in Guarnizo Cuspian's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Guarnizo Cuspian's detention serves neither purpose. The immigration official who considered his circumstances in 2024 determined that he should be released, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

The Court finds that ICE violated Guarnizo Cuspian's right to due process by revoking his release, designating him for expedited removal, and detaining him without reasonable notice and a meaningful opportunity to be heard. *See Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 160, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

### E. Conclusion

For the reasons stated above, the Court finds Guarnizo Cuspian's detention violates his right to due process under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED**:

Harol Guillermo Guarnizo Cuspian's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

1.     The respondents shall release Guarnizo Cuspian from custody within 24 hours of this Order.  The respondents shall facilitate Guarnizo Cuspian's transportation from the detention facility by notifying his counsel when and where he can be collected.

2.     All other requested relief is **DENIED**.

3.     The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on April 16, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1

13